UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NADIA WARD, individually and on behalf of all others similarly situated,<br><br>v.<br><br>THE ALLSTATE CORPORATION | Case No. 1:22-cv-02316<br>FLSA Collective Action |

**PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT**

SUMMARY

1. Like many other companies across the United States, The Allstate Corporation's ("Allstate") timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Allstate's organization.

3. As a result, Allstate's workers who were not exempt from overtime under federal law were not paid for all overtime hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Nadia Ward is one such Allstate worker.

5. Allstate could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Allstate used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. Allstate pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. Allstate made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. Allstate's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Ward brings this lawsuit to recover these unpaid overtime wages and other damages owed by Allstate to himself and Allstate's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Allstate's decision to make its own non-exempt employees workers bear the economic burden for the hack.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Allstate is headquartered in this District.

## PARTIES

13. **Plaintiff Nadia Ward** is a natural person.

14. Ward was, at all relevant times, an employee of Allstate.

15. Ward has worked for Allstate since September 2021.

16. Ward represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Allstate (including its subsidiaries and alter egos), who were who worked in the United**

**States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

17. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

18. **Defendant The Allstate Corporation ("Allstate") is a foreign corporation.**

19. Allstate is headquartered in this District.

20. Allstate may be served by service upon its registered agent, **CT Corporation System, 208 S. LaSalle St., Ste. 814, Chicago, IL 60604**, or by any other method allowed by law.

21. Allstate's subsidiaries and alter egos include, but are not limited to:

- Allstate County Mutual Insurance Copmany
- Allstate Fire and Casualty Insurance Company
- Allstate Insurance Company
- Allstate Indemnity Company
- Allstate Life Insurance Company
- Allstate Life Insurance Company of New York
- Allstate New Jersey Insurance Company
- Allstate New Jersey Property and Casualty Insurance Company
- Allstate Property and Casualty Insurance Company
- Allstate Texas Lloyd's
- American Heritage Life Insurance Company
- Castle Key Insurance Company
- Castle Key Indemnity Company
- Encompass Insurance Company
- Esurance, Inc.

22. At all relevant times, Allstate exerted operational control over its subsidiaries and alter egos.

23. At all relevant times, Allstate had the authority to set pay practices for workers of its subsidiaries and alter egos.

24. At all relevant times, Allstate substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

25. At all relevant times, Allstate had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

26. Allstate employed and/or jointly employed, with its subsidiaries and alter egos, Ramirez and the Similarly Situated Workers.

27. Allstate and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

28. Throughout this Complaint, Allstate and its subsidiaries and alter egos are referred to jointly as "Allstate."

## COVERAGE UNDER THE FLSA

29. At all relevant times, Allstate was an employer of Ward within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. At all relevant times, Allstate was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. Allstate was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

32. During at least the last three years, Allstate has had gross annual sales in excess of $500,000.

33. Allstate was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

34. Allstate employs many workers, including Ward, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

35. The goods and materials handled, sold, or otherwise worked on by Ward, and other Allstate employees and that have been moved in interstate commerce include, but are not limited to, office supplies, computers, and telecommunications equipment.

## FACTS

36. Allstate is an insurance company.

37. Many of Allstate's employees are non-exempt hourly and salaried workers.

38. Since at least 2021, Allstate has used timekeeping software and hardware operated and maintained by Kronos.

39. On or about December 11, 2021, Kronos was hacked with ransomware.

40. The Kronos hack interfered with the ability of its customers, including Allstate, to use Kronos's software and hardware to track hours and pay employees.

41. Since the onset of the Kronos hack, Allstate has failed to keep accurate track of the hours that Ward and Similarly Situated Workers have worked.

42. Instead, Allstate has used various methods to estimate the number of hours Ward and Similarly Situated Workers work in each pay period.

43. For example, Allstate issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

44. As a result of Allstate's failure to accurately track their actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

45. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

46. Ward is one of the thousands of employees affected by these pay and timekeeping practices.

47. Instead of paying Ward for the hours she actually worked (including overtime hours), Allstate simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Ward's actual hours worked and regular pay rates, in multiple workweeks.

48. In some instances, Ward was paid portions of the overtime she worked, but the overtime rate she was paid was not at least 1.5 times her agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

49. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

50. Allstate knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

51. Allstate knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

52. Allstate could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

53. Instead of accurately tracking hours and paying employees their overtime, Allstate decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

54. Even to the extent it did pay some overtime to affected employees, Allstate failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Allstate did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

55. It was feasible for Allstate to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

56. But Allstate chose not to do that.

57. In other words, Allstate pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

58. Ward is just one of the many Allstate employees who had to shoulder the burden of this decision by Allstate.

59. Ward was a non-exempt hourly employee of Allstate.

60. Ward regularly worked over 40 hours per week for Allstate.

61. Ward's normal, pre-Kronos hack hours are reflected in Allstate's records.

62. Since the Kronos hack, Allstate has not paid Ward for her actual hours worked each week.

63. Since the hack took place, Allstate has not been accurately recording the hours worked by Ward and its other workers.

64. Even when Allstate has issued payment to Ward for any overtime, the overtime is not calculated based on Ward's regular rates, as required by federal law.

65. Allstate was aware of the overtime requirements of the FLSA.

66. Allstate nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Ward.

67. Allstate's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

68. The full overtime wages owed to Ward and the Similarly Situated Workers became "unpaid" when the work for Allstate was done—that is, on Ward and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

69. At the time Allstate failed to pay Ward and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Allstate became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under federal and California law.

70. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

71. Even if Allstate made any untimely payment of unpaid wages due and owing to Ward or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

72. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

73. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Allstate's acts and omissions resulting in the unpaid wages in the first place.

74. Ward and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Allstate under federal law.

### COLLECTIVE ACTION ALLEGATIONS

75. Ward incorporates all other allegations.

76. Numerous individuals were victimized by Allstate's patterns, practices, and policies, which are in willful violation of the FLSA.

77. Based on her experiences and tenure with Allstate, Ward is aware that Allstate's illegal practices were imposed on the FLSA Collective.

78. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

79. These employees are victims of Allstate's respective unlawful compensation practices and are similarly situated to Ward in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

80. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

81. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

82. Allstate's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

83. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA

84. Ward incorporates each other allegation.

85. By failing to pay Ward and the FLSA Collective members overtime at 1.5 times their regular rates, Allstate violated the FLSA. 29 U.S.C. § 207(a).

86. Allstate owes Ward and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

87. Allstate owes Ward and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

88. Likewise, Allstate owes Ward and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

89. Allstate knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

90. Because Allstate knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Allstate owes these wages for at least the past three years.

91. Allstate's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

92. Because Allstate's decision not to pay overtime was not made in good faith, Allstate also owes Ward and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

93. Accordingly, Ward and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## JURY DEMAND

94. Ward demands a jury trial on all issues.

## RELIEF SOUGHT

Ward prays for judgment against Allstate as follows:

    a. For an order certifying a collective action for the FLSA claims;

    b. For an order finding Allstate liable for violations of federal wage laws with respect to Ward and all FLSA Collective members covered by this case;

    c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Ward and all FLSA Collective members covered by this case;

    d. For a judgment awarding attorneys' fees to Ward and all FLSA Collective members covered by this case;

    e. For a judgment awarding costs of this action to Ward all FLSA Collective members covered by this case;

    f. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Ward and all FLSA Collective members covered by this case; and

g. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
    **Matthew S. Parmet**
    N.D. Ill. Bar # 24069719 (TX)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Michael N. Hanna, Esq.**
N.D. Ill. Bar No.: 85035 (FL)
**MORGAN & MORGAN, P.A.**
55 E. Monroe St., Ste. 3800
Chicago, IL 60603
Tel: (313) 739-1951
Fax: (313) 739-1976
mhanna@forthepeople.com

**Attorneys for Plaintiff**